United States District Court
Northern District of Alabama
Southern Division

02 DEC 13 PM 2:58

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| Beanie Moss, | ] |
| | ] |
| Plaintiff(s), | ] |
| | ] |
| vs. | ] CV 01-N-03253-S |
| | ] |
| Miller & Miller Construction Co., | ] |
| | ] |
| Defendant(s). | ] |

ENTERED
DEC 13 2002

Memorandum of Opinion

I.   IIntroduction

The plaintiff, Beanie Moss ("Moss"), alleges that his employer, defendant Miller & Miller Construction ("Miller") discriminated against him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981.

This matter presently is before the court on Miller's motion for summary judgment, filed on September 4, 2002 (Doc. #28). As noted in Exhibit D to the Court's February 19, 2002, Initial Order, Moss's opposition to the motion was due to be filed on September 25, 2002 (Doc. #7). Immediately prior to the submission scheduled date, the court received notice from Moss's lawyer that she was no longer representing him (Doc. #26). Therefore, the court treated the plaintiff as if he were proceeding pro se and, even though he initially failed to file a timely response, entered an order asking him to inform the court how he wished to proceed. (Doc. #32). As it does for all pro se plaintiffs, the court attached an

explanation of the summary judgment process and informed him of the consequences of having summary judgment entered against him. (*Id.*). A response to the show cause order was due on October 14, 2002. Mr. Moss did not file a response until November 25, 2002. In spite of the plaintiff's delay, the court has considered his response in making its decision. (Doc. #35). After careful consideration of the arguments submitted by both parties, the relevant law, and the record as a whole, the motion for summary judgment is due to be granted in all respects.

## II.     Statement of Facts

Moss, who is African-American, was employed by Miller as a truck driver from February 2, 1999, to August 21, 2001. Defendant Miller is a general contractor specializing in concrete work, including bridges, culverts, and retaining walls. Plaintiff was first employed by the defendant in 1993. He was soon terminated because he failed to pass the company drug test. Mr. Moss was again employed with defendant in February of 1999 as a truck driver. During his employment, he was supervised by General Superintendent Bobby Webster ("Webster"), who is white and by shop supervisor John Swanner ("Swanner"), who is also white. As shop foreman, Swanner has a role in recommending use of Miller's progressive discipline system. In spite of this progressive system, an employee who violates company policies may still be terminated without any prior warning.

Plaintiff's job involved driving a truck and the performance of other duties such as repairing flat tires, changing tires on vehicles, collecting trash, sweeping the floor and assisting the mechanics. Although the plaintiff denies that he was ever spoken to regarding his poor work habits, such as sleeping on the job, Swanner reports that he had to awaken

the plaintiff while at work as did Webster. (Swanner Depo., p. 19; Webster Depo., pp. 103-04). In addition, although the plaintiff denies that coworkers refused to work with him, the plaintiff apparently had a reputation for being lazy at work and was disciplined verbally (but not in writing) for performance problems. (Pl. Depo., pp. 133-34; Webster Depo., p. 22; Miller Depo., p. 101).[1]

On August 21, 2001, Plaintiff engaged in a physical altercation with a white co-worker, Dave Barksdale. Plaintiff alleges that on the morning of the altercation, Barksdale inquired as to whether other workers would have to "pick up" Plaintiff's "slack like always," told plaintiff that he was "going to kick [his] black butt," and took a swing at the plaintiff. (Pl. Depo., pp. 66-67). He and Barksdale then wrestled to the floor until their co-workers broke up the fight. (Pl. Depo., p. 67; Swanner Depo., pp. 33-34). Swanner then found Plaintiff on top of Barksdale and Webster witnessed the two being separated by their coworkers. (Webster Depo., pp. 24-25; 42-43). Plaintiff then alleges that after coworkers broke up the fight, Webster "singled" him out. (Pl. Depo., p. 69). Webster then instructed Barksdale to go to Swanner's office and plaintiff to go into the kitchen or the breakroom. Initially, plaintiff did not go into the kitchen as Webster instructed. Heated words were exchanged between Webster and the plaintiff. Plaintiff and Webster finally talked and then they brought in Ed Miller ("Mr. Miller"), the President of Miller, who is brought in when there are problems with personnel. Miller was informed of the situation and asked Webster to gather witnesses and to take statements from them. The statements confirmed that Barksdale and plaintiff

---

[1] Plaintiff alleges that all of the alleged performance deficiencies were not true. (Doc. #35). Yet, in his deposition he did not contest his reputation for laziness while at work.

were involved in an altercation about fixing a trailer. As Miller was unable to determine who provoked the altercation, the decision was made to discipline both employees for their involvement by sending them home for the day without pay. (Miller Depo., pp. 66-68, 74).

Barksdale signed the disciplinary form acknowledging his involvement in the altercation and was sent home for the day. Mr. Moss, however, refused to sign the disciplinary form because he disputed everything on it. (Miller Depo., pp. 66-68; Pl. Depo., pp. 79, 85-86; Exh. 5 to Pl. Depo). Mr. Miller then informed the plaintiff that his employment would probably be terminated. (Pl. Depo., pp. 79-80). After the plaintiff refused to accept the disciplinary action for his involvement in the altercation, Mr. Miller met with other members of Miller management. Based on the combination of the dissatisfaction with the plaintiff's work habits and his refusal to accept the proposed disciplinary action, Mr. Miller decided to terminate the plaintiff's employment.

Mr. Miller informed the plaintiff later that day that his employment was terminated. The plaintiff alleges he was told he was terminated because he "started everything." (Pl. Depo., p. 87). Miller also gave Plaintiff a written notification that he was being terminated for violation of company policies. (Pl. Depo., pp. 88-89; Exh. 6 to Pl. Depo.; Miller Depo., pp. 108-09). Miller has not hired anyone to replace the plaintiff since his termination. In addition, since Webster has been General Superintendent at Miller, the company has terminated the employment of all truck drivers who have either been insubordinate or who have performed unsatisfactorily at work. (Webster Aff. ¶ 3; Exh. A to Webster Aff.).

Plaintiff also claims that he was subject to a hostile work environment. Plaintiff claims that his supervisor previously told him a racial joke but that he did not report it. (Pl. Depo.,

pp. 121-22). In addition, the plaintiff also later alleged that there were several jokes that he has trouble recalling. (Doc. #35). Plaintiff filed an EEOC charge on September 10, 2001. The EEOC issued a Dismissal and Notice of Right to Sue on September 18, 2001.

## III.    Standard of Review

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A factual dispute is genuine only if "a reasonable jury could return a verdict for the non[-]moving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991). Further, "[f]or factual issues to be considered genuine, they must have a real basis in the record." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (quoting *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993)). The moving party bears the burden of proving the absence of a genuine issue of material fact, and in evaluating the moving party's argument, the court must view the evidence in the light most favorable to the non-moving party. *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). Once the party moving for summary judgment demonstrates a lack of any genuine issues of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Allen v. Tyson Food, Inc.*, 121 F.3d 642, 646 (11th Cir. 1996) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The non-moving party "may not rely on his pleadings to avoid judgment against him." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (quoting *Ryan v. Int'l Union of Operating Eng'rs, Local 675*, 794 F.2d 641, 643 (11th Cir. 1986)). Where the non-moving party does not respond to the motion, "summary

judgment, if appropriate, shall be entered against the [non-moving] party." Fed. R. Civ. P. 56(e).

## IV. Discussion

### A. Race Discrimination

#### 1. General Analytical Framework

If the plaintiff is to prevail on his disparate treatment claims, he must submit some proof of his employer's discriminatory motive, that is, some causal link between his race and the actions of which he complains. *See Chapman v. AI Transport*, 229 F.3d 1012 (11th Cir. 2000). In a Title VII case such as this, where the plaintiff relies solely upon circumstantial evidence, the plaintiff has the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253-254 & n. 6 (1980), 101 S. Ct. 1089, 1094 & n. 6, 67 L. Ed. 2d 207 & n. 6. "Demonstrating a prima facie case is not onerous, it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Lathem v. Department of Children & Youth Servs.*, 172 F.3d 786, 792 (11th Cir. 1999). Typically the prima facie case requires proof that the plaintiff was: (1) a member of the protected group (2) subjected to an adverse employment action (3) qualified to do the job; and (4) replaced or lost the position to someone outside of that protected group. *McDonnell Douglas*, 411 U.S. at 802; *Id.* at 802 n.13 ("The facts necessarily will vary in Title VII cases, and specification . . . of the prima facie proof required from [the plaintiff] is not necessarily applicable in every respect to differing factual situations.");

accord *Chapman*, 229 F.3d at 1024 (summarizing the factors in an ADA disparate treatment case).

Once the plaintiff establishes a prima facie case, the burden of production then shifts to the employer to articulate a "legitimate nondiscriminatory reason" for the alleged discriminatory employment action. *Lathem*, 172 F.3d at 793. "To satisfy that burden of production, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Chapman*, 229 F.3d at 1024 (quoting *Burdine*, 450 U.S. at 254-55, 101 S. Ct. at 1094 (citation and footnote omitted)).

After the employer presents a legitimate nondiscriminatory reason for its action, the presumption of discrimination is eliminated leaving the elements of the prima facie case. *Id.* at 1024-25. The plaintiff must then prove by a preponderance of the evidence that the reason offered by the employer was not the true reason for the employment decision, but rather is a mere pretext for discrimination. *Id.* The plaintiff may meet this burden by persuading the fact-finder either directly that a discriminatory reason more than likely motivated the employer, or indirectly that the employer's proffered explanation is unworthy of belief. *Id.* If the plaintiff succeeds in meeting this burden, the disbelief of the defendant's proffered reasons, together with the prima facie case, is sufficient circumstantial evidence to support a finding of discrimination and preclude summary judgment. *Id.* at 1025.

### 2.   **Prima Facie Case**

Here, the plaintiff must show that (1) he is a member of a protected class; (2) he was accused of misconduct similar to that of persons outside the protected class; and (3) that

similarly situated employees outside the plaintiff's class received more favorable treatment than did he. *Jones v. Bessemer Carraway Medical Ctr.*, 137 F.3d 1306, 1311 n. 6 (11th Cir. 1998), *modified in non-relevant part on denial of reh'g,* 151 F.3d 1321 (11th Cir. 1998) (modifying *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989)); *Early v. Morris Newspaper Corporation*, 54 F. Supp. 2d 1261, 1271 (M.D. Ala. 1999) (noting the change in standard).

Defendant contends that the plaintiff cannot establish a prima facie case because he cannot prove that he was treated less favorably than similarly-situated white employees who failed to perform satisfactorily. As the court explained in *Ashley v. Southern Tool, Inc.*, plaintiff must show that he is similarly situated "in all relevant respects" to other similarly situated cohorts. 201 F. Supp. 2d 1158, 1165 (N.D. Ala. 2002). In *Southern Tool*, the court held, "[I]n carrying her burden here, plaintiff must satisfy the court that the employees allegedly receiving more similar treatment are, in fact, similarly situated. 'In determining [whether they are similarly situated] it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.' *Id.* (quoting *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001)); *see also Anderson v. WBMG-42*, 253 F.3d 561, 564 (11th Cir. 2001) (citing the standard); *Gaston v. Home Depot USA, Inc.*, 129 F. Supp. 2d 1355, 1368-69 (S.D. Fla. 2001). "The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishment imposed. We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Home Depot USA,*

*Inc.*, 129 F. Supp.2d at 1368 (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)). Moreover, the similarly situated employees "must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's without such differentiating conduct that would distinguish their conduct or the appropriate discipline for it." *Id.* (quoting *Mazzella v. RCA Global Communications, Inc.*, 642 F. Supp. 1531, 1547 (S.D.N.Y. 1986)); *see also Green v. Pittsburgh Plate & Glass Co.*, 2002 WL 31204912, *13 (N.D. Ala. 2002) (citing the aforementioned authority with approval); *Wyant v. Burlington Northern Santa Fe Railroad, R.C.*, 210 F. Supp. 2d 1263, 1285-86 (same).

The court cannot say that the defendant's workplace appears to be completely devoid of evidence of racial tension. Nevertheless, the court's concern with certain elements of the defendant's workplace does not necessarily give rise to a federal employment discrimination case. *Cf. Hicks v. Alabama*, 45 F. Supp. 2d 921 (S.D. Ala. 1998) ("Alleged racial animus of a supervisor does not alleviate the need to satisfy elements of a prima facie case, although statements showing some racial animus may be significant evidence of pretext once a plaintiff has set out a prima facie case.") (quoting *Jones v. Bessemer Carraway Medical Ctr.*, 137 F.3d 1306, 1313 (11th Cir. 1998)).

In this case, the plaintiff has failed to meet his burden of creating a genuine issue of material fact with respect to whether he was similarly situated to Barksdale "in all relevant respects." *Southern Tool,* 201 F. Supp. 2d at 1165. As defendant points out and the court agrees, although both plaintiffs were accused of the same conduct, each handled the events following the altercation with important differences. Plaintiff admits that he was involved in

an altercation at work, that he initially refused to follow his supervisor's direct instructions, and that he refused to sign a disciplinary form acknowledging his involvement in the altercation. Moreover, prior to the alleged incident, Plaintiff had a history of performance deficiencies which at least received some type of verbal warning. Barksdale, by contrast, followed Webster's instructions after the altercation without conflict or delay and acknowledged his role in the involvement by signing the disciplinary form and accepting the disciplinary action, which had Plaintiff chosen to accept it, would have been identical to his. Therefore, the court cannot say that "the quantity and quality of the comparator's conduct [is] nearly identical." *Home Depot USA, Inc.*, 129 F. Supp. 2d at 1368 (citations omitted).

### 3. Legitimate Nondiscriminatory Reasons and Proof of Pretext

Even if the plaintiff were able to establish a prima facie case of race discrimination with respect to his termination, the defendant has offered legitimate, nondiscriminatory reasons for his termination and the plaintiff raises no genuine issue of material fact regarding whether these reasons are pretextual. The undisputed facts demonstrate the defendant has discharged all truck drivers, black and white, who defendant considered to have performed unsatisfactorily. (Webster Aff. ¶ 3; Exh. A to Webster Aff.). Moreover, the defendant has established that there were problems with Plaintiff's work habits which justified the termination. Namely, plaintiff's sleeping on the job and refusal to perform assigned duties, the plaintiff's verbal dispute with Webster, and his refusal to accept disciplinary action for his involvement in the altercation with Barksdale. Plaintiff cannot point

to any other similarly situated white employee who was not terminated for unsatisfactory work performance, insubordination, and refusal to accept disciplinary action.

The plaintiff's rebuttal to the alleged nondiscriminatory reasons did not specifically address the defendant's legitimate nondiscriminatory reasons other than with the conclusory statement that the "truth shall make us free." (Doc. #35). Nevertheless, as the court is mindful of the plaintiff's pro se posture, the court has searched the record for evidence proof of pretext. It is well established that, a "plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason. *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (citations omitted). Even assuming the defendant was mistaken in its decision to terminate the plaintiff's employment, so long as it had an honest, good faith belief that the plaintiff had violated its policy, its mistake will not be considered a pretext for discrimination. "An employer's good faith belief that an employee's performance is unsatisfactory constitutes a legitimate nondiscriminatory reason for termination." *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993). "The law is clear that, even if a Title VII claimant did not in fact commit the violation with which he is charged, an employer successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation." *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989) (citations omitted); *see also Abel v. Dubberly*, 210 F.3d 1334, 1339 n.5 (11th Cir. 2000) ("Although termination may, to some, seem a draconian

response given the level of plaintiff's offense, the reasonableness of [defendant's] disciplinary policies are not a consideration. As we have said before, an 'employer may fire an employee for good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as it is not a discriminatory reason.'"). *Nix v. WLCY Rasion/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984)). Thus, even if Miller were somehow mistaken about the plaintiff's poor job performance or his involvement in the altercation, Miller's conduct subsequent to the altercation suggests he had a good faith belief that plaintiff had violated company policy.

Plaintiff might argue that the defendant did not follow its progressive disciplinary policy with respect to the plaintiff and that this failure somehow demonstrates race discrimination. Although the defendant maintains a progressive discipline system, it has established that if an employee plainly violates company policies, the employee can be terminated without prior warning. (Webster Depo., pp. 11, 15). Defendant listed other truck drivers who had been terminated for unsatisfactory work or insubordination and who did not receive a verbal warning and two disciplinary warnings. (Webster Aff. ¶ 3; Exh. A to Webster Aff.). Even disregarding the prior work performance problems, the evidence suggests that at the time of the altercation the defendant and Barksdale did not behave similarly. As such, the plaintiff has failed to provide evidence that race was the reason for any difference in treatment between himself and Barksdale.

Because the plaintiff cannot establish a prima facie case of discrimination based on his race and because the plaintiff cannot demonstrate the defendant's legitimate,

nondiscriminatory reasons for terminating his employment are pretextual, the court finds that summary judgment is merited.

### B. Hostile Environment

A hostile work environment claim under Title VII is established upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Miller v. Kenworth Dothan, Inc.,* 277 F.3d 1269, 1275 (11th Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The Eleventh Circuit has repeatedly instructed that a plaintiff wishing to establish a hostile work environment claim must show: "(1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment (3) that the harassment was based on a protected characteristic of the employee; (4) that the harassment was sufficiently severe and pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or direct liability." *Id.* (quoting *Mendoza v. Borden, Inc.*, 195 F.3d at 1245 (11th Cir. 1999)).

The record before the court fails even to approximate racially hostile work conditions that were "severe and pervasive." In his deposition, the plaintiff alleges that his supervisor once told a racial joke which he cannot remember and that he never reported. The plaintiff's response indicates that he was reluctant to lie under oath in his deposition and required time to "reflect back on the racial jokes." (Doc. #35). Despite the addition of this new information, the plaintiff can provide no evidence that the jokes amounted to severe

and pervasive harassment. Moreover, the plaintiff cannot establish that Defendant ever had notice of the alleged discriminatory conduct.

**V.     Conclusion**

The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this _12th_ of December, 2002.

Edwin Nelson
United States District Judge